WILLIAM PARTLOW, Admr.

v.

THE ILLINOIS CENTRAL RAILROAD COMPANY.

*Filed at Springfield April 2, 1894.*

1. RAILROADS—*speed of trains—right to regulate.* In the absence of any ordinance of a village regulating the speed of trains through its corporate limits, a railway company will have the right to run its trains through such village at any speed it may think proper, consistent with the safety of its trains and passengers, and of persons rightfully upon its right of way at road crossings, who are exercising ordinary care in crossing the railroad. Any person without ordinary care crossing a railroad, and receiving an injury by reason of the want of such care, can not recover therefor.

2. Under the rules of the common law, a railroad company is required to exercise its franchise with due regard to the safety of its passengers and such persons as may travel on the highways crossing its railroad tracks; and in establishing the rate of speed that trains may be run, due regard must be had not only to the safety of passengers, but also to the safety of all persons, in the exercise of ordinary care, traveling on the highways over and across the railroad tracks.

3. So long as the increased speed of trains adds nothing to the damage and risks of passengers and the traveling public on highways, no one can reasonably complain; and, subject to this limitation, railroad companies may fix such rate of speed for the running of passenger trains as they may think best.

4. SAME—*speed of trains—directions of the president of a village.* On the trial of an action against a railroad company, brought to recover for a personal injury resulting from negligence, the president of the village wherein the accident occurred was called as a witness by the plaintiff, and asked if he had ever directed the marshal to notify the railroad company about fast running in the town, which the court refused to admit: *Held,* that the evidence was properly excluded.

5. SAME—*speed of train through town—as evidence of negligence.* A person was killed at a highway crossing over a railroad in a town, and in an action against the railway company to recover damages for the killing, the court, at the request of the defendant, instructed the jury "that in the absence of any proof of a village ordinance, such a rate of speed as is customary among railroad companies with their fast trains is not, of itself, negligence on the part of the railroad company:" *Held,* that the instruction did not lay down a correct rule, but under the circumstances of this case the error was harmless.

21—150 ILL.

6. Whether the speed of a train is negligence or not does not depend upon any custom or usage that may be established by railroad companies, nor upon the speed that may or may not be customary among such companies. In the absence of a statute or ordinance a railway company has the right to establish the speed of its trains.

7. NEGLIGENCE—*failure to look for a train at a railroad crossing.* The fact that a person, in attempting to cross a railroad track at a highway crossing, fails to look and listen to see if any train is coming on the track, are facts proper for the jury to consider in determining whether such person has been negligent; but it can not be said, as a matter of law, that the failure to observe such acts is negligence.

8. SAME—*when negligence of plaintiff is immaterial.* Where the jury, in response to special interrogatories, find that the railroad company was guilty of no negligence or want of care which contributed to the accident, it is immaterial whether the person injured was guilty of negligence in failing to look and listen for the train.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Coles county; the Hon. E. P. VAIL, Judge, presiding.

Mr. JAMES W. CRAIG, for the plaintiff in error.

Mr. HORACE S. CLARK, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by William Partlow, administrator of the estate of William F. Partlow, deceased, against the Illinois Central Railroad Company, to recover damages resulting from the death of William F. Partlow, a son of the plaintiff, which occurred at a railroad crossing in the village of Humboldt, by a collision of a wagon and team of horses with a passenger train of the railroad company. On a trial of the cause in the circuit court the jury found the defendant not guilty. The court rendered judgment on the verdict, and that judgment was affirmed in the Appellate Court.

It appears from the evidence that the village of Humboldt contains about three hundred inhabitants. The railroad runs north and south through the village, and the highway upon

which the deceased was driving runs east and west. A short time before seven o'clock in the evening on the 12th day of November, 1891, the vestibule passenger train of the Illinois Central Railroad Company was running through the village of Humboldt at a speed of from forty to fifty miles an hour. Some of the witnesses place the speed at forty miles an hour, some at forty-five miles, and some at fifty. This train was known as a fast train, and made no stop at Humboldt. On the evening in question the deceased was riding in a two-horse wagon, with one Hushong, his brother-in-law. They were approaching the crossing from the west, while the train was coming from the north. Hushong was driving. The horses were both blind. The witnesses all agree that as the train approached the village, and at the crossing, a quarter of a mile north of where the collision occurred, the whistle was sounded, and there is also evidence that the bell was ringing and the whistle was sounded as the train came to the crossing where the accident happened. The deceased and Hushong did not, however, discover the train until they reached the crossing. Whether the team was on the track when the collision occurred, or whether it was driven against the engine as the train approached, is left in doubt from the evidence. The horses, wagon and the two parties were, however, all found after the accident on the west side of the track, which would seem to indicate that the team was driven against the engine.

The court instructed the jury to make special findings, and under the instructions the jury found that the deceased was not exercising reasonable care for his own safety at the time he was killed; that the whistle was sounded at least eighty rods before reaching the crossing where the accident occurred; that the bell was rung and the whistle sounded from a distance of eighty rods from the crossing at which the accident occurred, and kept ringing until such crossing was reached; that if the deceased had listened before the approach of said

train he could have heard it in time to have avoided the acci-
dent.    To the seventh interrogatory the jury answered as fol-
lows : "What negligence or want of care, if any, was there on
the part of the employes of the railroad company, contribut-
ing to the accident?"    Answer, "From the evidence, none."
The eighth was : "Had the train been running at a less speed,
would the accident have occurred?"    And the ninth : "If the
train had been running at a greater speed, would the accident
have occurred?" to both of which the jury answered that they
could not tell.    The jury also found : "If the deceased had
listened before the approach of the train he could have heard
it in time to have avoided the accident; that he did not listen
to ascertain if there was a train approaching."

On the trial the president of the village was called as a
witness, and he was asked if he had ever directed the marshal
to notify the railroad company about the fast running of the
train through the town.    The evidence was objected to, and
the court held that it was not admissible, and this ruling is
relied upon as error.    The town of Humboldt, if incorporated,
had the right to regulate the speed of trains in the incorpo-
rated limits of the town by ordinance, but until the town had
taken action by ordinance the president had no authority,
through the marshal or otherwise, to regulate or control the
action of the railroad company, and any direction he may
have given the marshal, or any notice the marshal may have
given the railroad company, could have no bearing on the
case.

Objection is made to the following instruction given in be-
half of the defendant :

"In the absence of any proof of an ordinance limiting the
speed of a railroad train through a city or village, the railroad
company would have a right to run its trains through any
such village or city at any rate of speed it thought proper,
consistent with the safety of its train and passengers, and of
persons rightfully upon its right of way at road crossings, who

were exercising ordinary care in crossing the railroad.   And
any person without ordinary care crossing such railroad, and
receiving any injury for the want of such care, could not re-
cover therefor on account of such speed alone."

We perceive no substantial objection to this instruction.
The village had passed no ordinance on the subject, and in
the absence of all instruction on the part of the municipality,
by ordinance, the railroad company might properly determine
for itself the rate of speed, consistent with the safety of its
train and passengers, and those who had occasion to cross the
railroad track in traveling on the highway.   As to the last
clause of the instruction, the rule is so well settled that a per-
son can not recover for an injury unless in the exercise of
ordinary care, that it will not be necessary to cite cases in its
support.

It is also claimed in the argument that the court erred in
giving the following instruction:

"The court further instructs the jury, that in the absence of
any proof of a village ordinance, such a rate of speed as is
customary among railroad companies with their fast trains is
not, in itself, negligence on the part of the railroad company."

We do not think this instruction lays down a correct rule.
Whether the speed of a train is negligence or not does not
depend upon any custom or usage that may be established by
railroad companies, nor upon the speed that may or may not
be customary among railroad companies.   In the absence of
a statute or ordinance a railroad company has the undoubted
right to establish the speed of its trans; but, under the rules
of the common law, a railroad company is required to exercise
its franchise with due regard to the safety of its passengers
and such persons as may travel on the highways crossing rail-
road tracks, and in establishing the rate of speed that their
trains may be run, due regard must be had not only to the
safety of passengers, but also to the safety of all persons, in the
exercise of ordinary care, traveling on the highways over and

across railroad tracks. (*Chicago and Northwestern Railroad Co.* v. *Dunlevy*, 129 Ill. 151.) So long as the increased speed of trains adds nothing to the dangers and risks of passengers and the traveling public on highways, no one can reasonably complain, and, subject to this limitation, railroad companies may fix such rate of speed for the running of passenger trains as they may think best. (*Indianapolis, Bloomington and Western Railroad Co.* v. *Hall*, 106 Ill. 375.) But while we do not regard the instruction as announcing a correct rule of law, we are unable to perceive in what manner the jury could be misled by it, and if the instruction did not mislead the jury the plaintiff could not be injured, and if not injured the error was harmless, and could not work a reversal of the judgment. There was no evidence before the jury to establish what rate of speed was customary on fast trains among railroad companies, and hence there was nothing in the case upon which the instruction could operate or to which it could be applied by the jury.

It is also claimed that the following instruction, given for defendant, is erroneous :

"Every person is bound to know that a railroad crossing is a dangerous place, and he is guilty of neglect unless he approaches it as if it were dangerous ; and if the jury believe, from the evidence, that the deceased, as he approached the railroad track in the wagon driven by his brother-in-law, did not look or listen to ascertain if a train was coming, and observe all reasonable precaution to avoid danger, but, on the contrary, the team was driven directly onto the track where the accident happened, without any steps being taken by the deceased or his brother-in-law to ascertain if a train was approaching, then the deceased was chargeable with such negligence as precludes a recovery in the case, unless the jury believe, from the evidence, that the servants of the railway company upon such occasion were guilty of gross negligence."

It has often been said by this and other courts, that it is the duty of a person approaching a railroad crossing to look and listen before attempting to cross, and that a person failing to observe that precaution is guilty of negligence; but where the statement has been made, the court, as a general rule, was discussing a question of fact, and in such cases the statement may be regarded as accurate. But the court can not say, as a matter of law, that the failure to look and listen is negligence. These facts are proper for the consideration of the jury in determining whether a person has been negligent, but it can not be said, as a matter of law, that the failure to observe such acts is negligence. (*Chicago and Northwestern Railway Co.* v. *Dunlevy*, 129 Ill. 135; *Terre Haute and Indianapolis Railroad Co.* v. *Voelker*, id. 542; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Wilson*, 133 id. 60.) But while the instruction may be inaccurate, as indicated, it could not injure the plaintiff. Upon looking into the record it will be seen that the jury, in their special verdict, found that the railroad company was guilty of no negligence or want of care which contributed to the accident. Under this finding it was immaterial whether the deceased was guilty of negligence in failing to look or listen, because in no event could the plaintiff recover if the railroad company was not guilty of negligence or the want of ordinary care. The error in the instruction being one that did no injury, can not be relied upon as a ground of reversal.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*